# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

MICHAEL S. PADDLETY, )
  )
    Plaintiff, )
  )
v. ) Case No. CIV-14-891-D
  )
CAROLYN W. COLVIN, Acting )
Commissioner of the Social Security )
Administration, )
  )
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff, Michael S. Paddlety, seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI). United States District Judge Timothy D. DeGiusti has referred this matter for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I. Procedural Background

Plaintiff filed applications for DIB and SSI on September 30, 2010, alleging a disability onset date of April 16, 2008. The Social Security Administration denied the applications initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 11], 19-40. The Appeals Council denied Plaintiff's request for review. AR 1-6. This appeal followed.

## II. The Administrative Decision

To determine whether a claimant is disabled, an ALJ generally follows the five-step sequential evaluation process set forth in the regulations. *See Wall v. Astrue*, 561 F.3d 1048,

1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). But when, as here, there is medical evidence of drug addiction and alcoholism (DAA) in the record, the ALJ must add a sixth step to the evaluation. That step requires the ALJ to determine whether DAA is a "material contributing factor" to the claimant's disability. 20 C.F.R. §§ 404.1535(a); 416.935(a). In making this determination, the "key factor ... is whether [the ALJ] would still find [claimant] disabled if [claimant] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1); *see also* SSR 13-02P, 2013 WL 621536 (Mar. 22, 2013).[1] The ALJ must identify which of the claimant's physical and/or mental limitations, upon which the threshold disability determination was based, would remain if the claimant stopped using drugs or alcohol. Then the ALJ must determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ finds that a claimant's remaining limitations would not be disabling, then DAA is a "material contributing factor" to the claimant's disability, and the ALJ must find the claimant is not disabled. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); *see also* SSR 13-02p. If the ALJ finds the remaining limitations would in and of themselves be disabling, then the ALJ must find that the claimant is disabled. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

The ALJ followed the proper sequential evaluation process by including alternative findings at steps three, four and five of the sequential evaluation to account for Plaintiff's limitations with and without DAA. The ALJ also made the sixth step finding required in such

---

[1] This Social Security Ruling became effective after the ALJ delivered his unfavorable decision but before the Appeals Council denied review. Plaintiff cites to this ruling, however, and the basic principles discussed in the ruling had previously been established in a prior policy interpretation, SSR 82-60, 1982 WL 31383 (Aug. 20, 1982) as well as a "teletype" issued by the Commissioner, emergency Message EM-96200. *See Salazar v. Barnhart*, 468 F.3d 615, 622-623 (10th Cir. 2006). SSR 13-02p superseded both SSR 82-60 and EM 96-200. The principles included in SSR 13-02p have been considered in this Report and Recommendation.

cases by determining whether Plaintiff would still be disabled if he stopped using drugs and alcohol.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date, April 16, 2008. AR 22. At step two, the ALJ identified nine impairments deemed to be severe: diabetes mellitus, obesity, back pain, asthma, chronic obstructive pulmonary disease, hypertension, chronic kidney disease, bipolar disorder, and polysubstance abuse.

At step three, the ALJ determined that with or without considering DAA, Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Listings). AR 25, 31.

At step four, the ALJ determined Plaintiff's residual functional capacity (RFC) including DAA:

> After careful consideration of the entire record, it is found that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to fumes, odors, dusts, and poor ventilation; and, avoid all exposure to temperature extremes and humidity. Additionally, with polysubstance abuse, the claimant consistently has a fifteen percent reduction in his ability to stay on tasks and complete tasks.

AR 28. The alternative RFC did not include the effects of polysubstance abuse:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to occasionally climb, balance, stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to fumes, odors, dusts, and poor ventilation; and, avoid all exposure to temperature

> extremes and humidity. Additionally, the claimant is able to understand, remember, and follow simple, repetitive 1-2-3 step tasks in a routine work setting. The claimant is able to appropriately interact with the general public with minimal and superficial contact.

AR 33.

At the second phase of step four, the ALJ determined that with or without considering the effects of DAA, Plaintiff could not perform the exertional demands of his past relevant work. AR 29-30.

At the fifth step of the sequential evaluation, the ALJ found there are no jobs existing in significant numbers in the national economy that Plaintiff can perform when the effects of DAA are considered. AR 30. Because the ALJ found Plaintiff's DAA material to his disability, however, the ALJ was required to formulate a second RFC without considering the effects of DAA. Based on the testimony of the vocational expert (VE), the ALJ determined that if Plaintiff stopped using drugs and alcohol, thereby allegedly regaining the fifteen percent reduction in his ability to stay on and complete tasks, he could perform a significant number of jobs in the national economy including office helper, small products assembler, laundry folder and price tagger. AR 39-40.

### III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by

other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**IV.** **Plaintiff's Claims**

In his first assignment of error, Plaintiff contends the ALJ failed to properly consider and weigh treating source opinion evidence. Plaintiff also challenges the sufficiency of the ALJ's finding that DAA has a material impact on Plaintiff's functional impairments. Finally, Plaintiff contends the VE's testimony identifying jobs Plaintiff could do under the alternative step-five RFC is inconsistent with the Dictionary of Occupational Titles (DOT) and does not constitute substantial evidence supporting the ALJ's ultimate finding.

**V.** **Analysis**

**A.** **Plaintiff's Challenge to the ALJ's Analysis of Treating Source Evidence**

In determining Plaintiff's claims of disability, the ALJ gave "significant weight" to the opinion of a state agency physician who "reviewed the objective medical evidence and prepared a [physical] residual functional capacity assessment." AR 28. The ALJ gave "substantial weight" to the checklist and narrative opinions and assessments of a state agency psychologist regarding Plaintiff's mental RFC. *Id.* Additionally, the ALJ gave "substantial weight" to the

testimony of the medical expert (ME), Rick Adams, Ph.D. AR 29. None of these sources examined Plaintiff. To the opinions of Plaintiff's treating physician, the ALJ gave one of Dr. Surya J. Pierce's opinions "minimal weight" and another "some weight but not great weight." AR 37. To the opinion of Plaintiff's primary mental health provider, Ms. Judy Crain, MSW, LADC, the ALJ gave "little weight." AR 36-37.

Social Security regulations distinguish among various types of "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502; 404.1513(a). Generally, the greatest weight is given to the opinion of a "treating source," which includes a physician or psychologist who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *See id.* §§ 404.1502; 404.1527(c)(2). The opinion of a "nontreating source," including a physician or psychologist who has examined the claimant but does not have a current or past "ongoing treatment relationship" with the claimant, must be considered but generally is not given as much weight as that of a treating source. *See id.*, §§ 404.1502; 404.1527. "Regardless of its source, [the ALJ] will evaluate every medical opinion" received into the record. *Id.*, §§ 404.1527(c); 416.927(c); 416.927(c).

When considering the opinion of a claimant's treating physician, the ALJ must first determine whether the opinion should be assigned "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(a)(2), (c)(2); 416.927(a)(2), (c)(2). The opinion of a treating physician is generally entitled to controlling weight if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with other substantial evidence in the record. *Watkins* at 1300 (applying SSR 96–2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. § 404.1527(c)(2). If a treating physician's medical opinion is not entitled to controlling

weight, the following factors must be considered in determining the amount of lesser weight to assign: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, at 1300–01; *see also* 20 C.F.R. §§ 404.1527(c)(2)-(6) 416.927(c)(2)-(6). Although an explicit discussion of each factor is not required, the record must reflect the ALJ's consideration of each factor. *Andersen v. Astrue*, 319 F. App'x 712, 722–23 (10th Cir. 2009) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). "[T]he ALJ must give good reasons in [the] notice of determination or decision for the weight he [or she] ultimately assigns the opinion." *Watkins*, at 1301 (first alteration in original) (internal quotation marks omitted). In any event, the ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

Plaintiff contends the ALJ erred in failing to properly analyze and weigh the opinions of his treating physicians and other treating sources as required by the regulations. First, Plaintiff challenges the ALJ's analysis of the opinion of Plaintiff's treating physician, Dr. Surya J. Pierce, M.D., a physician at the Little Axe Indian Clinic. On December 13, 2011, Dr. Pierce submitted a medical Opinion Regarding Residual Functional Capacity in a checklist form. The form indicated Plaintiff could stand and walk less than 2 hours in an 8-hour day, sit for less than 2 hours in an 8-hour day, lift less than 10 pounds on a frequent or occasional basis, and would miss

7

more than three days of work each month because of his impairments. Dr. Pierce also stated Plaintiff's symptoms would interfere with the attention and concentration needed to perform simple work tasks at least twenty-five percent of the workday. AR 670.

Dr. Pierce also wrote a letter in support of Plaintiff's disability claims. In the letter, Dr. Pierce emphasized Plaintiff's "progressive functional decline in the context of his mental illness." AR 740. She also emphasized the severity of Plaintiff's renal insufficiency, noting several hospitalizations during the prior year during which he was on the verge of needing hemodialysis. Finally, she referenced "recently discovered evidence of organic brain disease on CT.").[2] *Id.*

The ALJ gave "minimal weight" to Dr. Pierce's opinions reflected on the "checklist form," stating that the findings were "unsupported by the longitudinal record, treating medical records, and objective evidence." AR 37. The ALJ's reasons for the weight given to the checklist form are reasonable, given the lack of a narrative discussion of the assessed limitations.

Of greater concern is the weight the ALJ afforded Dr. Pierce's narrative opinion. The ALJ gave this opinion "some, but not great weight," again stating the opinion was "not fully supported by the treating medical records or objective medical evidence." AR 37. In support of this finding, the ALJ points to the findings of David Williams, M.D., who, according to the ALJ, "found the claimant's chronic kidney disease to be secondary to hypertensive nephrosclerosis caused by years of uncontrolled hypertension." *Id.* The ALJ does not explain why the cause of

---

[2] As the ALJ noted, the CT scan results were not attached to the letter. It is not clear whether there was a second CT scan other than the one taken on September 27, 2010, after Plaintiff had been knocked unconscious. AR 265. Social security proceedings are non-adversarial, however, and the ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). In this case, the ALJ might have had a better understanding of Plaintiff's impairments had she sought further information about the CT scan from Dr. Pierce. On remand, the ALJ might benefit from further exploration of this topic.

the renal insufficiency makes Dr. Pierce's opinion regarding its severity less credible, much less why any functional limitations from this severe impairment should be discounted. The ALJ's reasoning seems to be based on her assumption that Plaintiff should be denied benefits because he has not controlled his high blood pressure. There is no precedent for such reasoning. Moreover, the ALJ cites "inconsistencies" in the record as a reason to discount Dr. Pierce's opinion regarding the severity of Plaintiff's chronic kidney disease. The ALJ's reasoning seems to be that when Plaintiff was hospitalized for renal insufficiency, he was rehydrated and sent home without hemodialysis. *Id*. But Dr. Pierce never stated that Plaintiff had received hemodialysis, but rather that Plaintiff was on the verge of needing hemodialysis. AR 740. Thus there are no inconsistences between the medical record and Dr. Pierce's opinion.

Plaintiff also contends the ALJ should have given greater weight to the opinion of his primary mental health provider, Judy R. Crain, MSW LACD. Ms. Crain is a licensed alcohol and drug counselor (LACD) with a Master's Degree in social work (MSW). She works for the Central Oklahoma Community Mental Health Center under the supervision of doctors. AR 671-695. On December 21, 2011, Ms. Crain offered her opinion that Plaintiff's cognitive functioning had drastically declined during the previous six months. She reiterated a diagnosis of bipolar disorder with psychotic features. Ms. Crain noted that Plaintiff had once wandered away from his brother's home overnight. The police located Plaintiff walking up to a stranger's car believing the car belonged to his sister. Ms. Crain stated Plaintiff was not under the influence of drugs or alcohol at the time. AR 671. The ALJ gave Ms. Crain's opinion "little weight" noting that Ms. Crain is not an "acceptable medical source" as defined in the regulations. The ALJ also mistakenly relied on records from Red Rock Behavioral Health Services regarding a

hospitalization in late June of 2011 to support the weight afforded Ms. Crain's opinion. AR 606-650.

Social Security Ruling 06-03p (SSR 06-03p) provides guidance on consideration of opinions and evidence from "other sources" that are not "acceptable medical sources." Licensed clinical social workers, such as Ms. Crain, fall into the classification of "other sources." *Id.*, 2006 WL 2329939 at *2. The ruling explains that the factors set forth in the regulations for considering medical opinions can be applied to opinion evidence from "other sources." The factors include how long the source has known the individual and how frequently the source sees the individual; how consistent the opinion is with other evidence; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairments; and any other factors that tend to support or refute the opinion. *Id.* at *4-5.

Other than noting that Ms. Crain had treated Plaintiff for four months, the ALJ did not consider any of the factors suggested in SSR 06-03p before giving Ms. Crain's opinion little weight. The ALJ could, for example, have considered the fact that Ms. Crain is a specialist in the area of drug and alcohol addiction because she is a licensed alcohol and drug counselor. The ALJ might also have considered the length of the treating relationship and the frequency of contact. Ms. Crain's opinion is quite clear.

The ALJ also discredits Ms. Crain's opinion because it purportedly was "inconsistent with the inpatient mental health records correlating with the period of confusion when he claimant went up to a stranger's car." AR 37. According to the ALJ, "during this particular period of inpatient care, the claimant admitted that the had not been taking his psychotropic medications and that he had been overusing his Flexeril and Ultram, as well as taking somebody else's Xanax." AR 37. The ALJ is incorrect. Exhibit 19, to which the ALJ cites in support of

her statements, consists of records from Red Rock Behavioral Health Services Crisis Unit where Plaintiff was admitted for help with psychotic symptoms on June 13, 2011, a full six months before Ms. Crain's opinion. AR 606-650. Plaintiff's previous encounter with the Red Rock Behavioral Health Services Crisis Unit was in November of 2010, a full year before Ms. Crain's opinion. Those records are included in Exhibit 3. AR 432-458. The medical records do not support the ALJ's reasons for the weight given to Ms. Crain's opinion.

In a Clinical Interpretive Summary dated June 8, 2012, Ms. Crain summarized Plaintiff's struggles with episodic mixing of medications resulting in delusions and visions with paranoia. The score of 21 on his first Mental Status Questionnaire (MSQ) was interpreted as a sign of mild dementia. Ms. Crain stated his most recent MSQ had improved to 27. Ms. Crain stated the obvious fact that the "mixture of drugs [and alcohol] were impairing his cognitive abilities." *Id*. This evidence, however, is not sufficient to support the ALJ's determination of materiality of DAA. There is no indication in the record that an improvement from an MSQ score of 21 to an MSQ score of 27 is indicative of an ability to work without distraction from remaining mental health symptoms. On remand, the ALJ should reconsider the opinions of Plaintiff's treating sources.

### B. The Materiality of Substance Abuse on Plaintiff's Functional Impairments

The Social Security Act provides that a claimant "shall not be considered to be disabled ... if alcoholism or drug addiction would … be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 223(d)(2)(C); 1614(a)(3)(j). In his second assignment of error, Plaintiff contends the ALJ failed to properly evaluate the materiality of DAA on Plaintiff's functional limitations.

When, as in this case, an ALJ has determined a claimant is disabled considering all his medically determinable impairments including DAA, the ALJ must then determine "whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol." SSR 13-02p *2. The ALJ "must provide sufficient information in [her] determination or decision that explains the rationale supporting [her] determination of the materiality of DAA so that a subsequent reviewer considering all of the evidence in the case record is able to understand the basis for the materiality finding[.]" *Id.*

In determining that DAA is material to Plaintiff's disability, the ALJ relied in part on the report of consultative psychologist Raymond Fuchs, Ph.D. AR 24, 462-468. The examination dated December 21, 2010, predated Plaintiff's outpatient mental health care. *Id.* But Plaintiff still exhibited cognitive problems after he had begun to receive mental health care, and even when he was not intoxicated. Thus, Dr. Fuchs' opinion cannot be considered a definitive finding that Plaintiff's mental impairments would not continue to be disabling if Plaintiff stopped drug and alcohol abuse. *See* SSR 13-02p *9 (materiality of DAA must be supported by evidence establishing claimant with co-concurring mental disorder would not be disabled absent DAA; adjudicators may not rely exclusively on medical expertise and nature of claimant's mental disorder).

Dr. Fuchs administered the Millon Clinical Multiaxial Inventory (MCMI).[3] Based on the results, Dr. Fuchs diagnosed Plaintiff with Borderline Personality Disorder. Dr. Fuchs described Plaintiff as an "environmentally reactive and developmentally disordered individual who experiences severe disruption of mood modulation." AR 464. He further stated that a person like Plaintiff is "at high risk to substance abuse and brief episodes of marginally-appearing

---

[3] The MCMI is a diagnostic instrument based on the theories of personality traits developed by Dr. Theodore Millon, Ph.D. The test results are linked to personality traits described in the DSM-IV. *See* www.millon.net (last accessed October 21, 2015).

psychotic behavior." *Id.* This description, based on objective testing, suggests that Plaintiff's DAA could be a symptom of his underlying Borderline Personality Disorder rather than the cause. If so, it seems less certain that cessation of DAA would restore his ability to work. Dr. Fuchs also stated that Plaintiff's estimated concentration and completion of tasks is "impaired by intense internalized psychological dynamic and problems." AR 467.

In his Mental Functioning Capacity Assessment, Dr. Fuchs found Plaintiff's sustained concentration and persistence to be "[s]eriously impaired by substance abuse issues, severe psychosocial strains and adjustments, [and] feelings of paranoia and distraction." AR 468. Dr. Fuchs stated Plaintiff would be "[u]nable to complete workdays without interruptions from psychological based symptoms." *Id*. Additionally, Dr. Fuchs found Plaintiff's social interaction to be "[s]eriously impaired by paranoid perceptions, projections and Borderline Personality reactions to environmental circumstances as well as social relationships and persistent detachment or depression." *Id.* The ALJ included only selected portions of Dr. Fuch's findings in her decision. In fact, she cited only those portions that could be interpreted as supporting her findings. For example, the ALJ stated only that Plaintiff's concentration was "limited due to his substance abuse issues." AR 24. She then stated Plaintiff's "sustained concentration and persistence were seriously impaired by substance abuse issues, with feelings of paranoia and distraction." This statement suggests that substance abuse was the sole cause of Plaintiff's impaired concentration; the ALJ omitted the phrase, "severe psychosocial strains and adjustments, [and] feelings of paranoia and distraction," that Dr. Fuchs had included in his statement as co-existing causes of Plaintiff's distraction. "The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts

13

favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)).

The ALJ's determination that ADD is material to Plaintiff's disability is based on the opinion of a state agency medical source that had never examined Plaintiff. AR 28. The non-examining source, like the ALJ, based her opinion on selected details from the medical record that supported her opinion as to the materiality of ADD in this case. AR 28. The ALJ's determination of the materiality of ADD is not supported by substantial evidence in the record. Thus, reversal and remand are required.

## C. Accuracy of the Vocational Findings

Plaintiff's final assignment of error arises from the VE's testimony during the administrative hearing. Plaintiff contends the VE's testimony is inconsistent with information in the Dictionary of Occupation Titles (DOT). It is well established that an ALJ has a duty to determine whether a VE's testimony is consistent with information in the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999) (ALJ, since he or she has the burden at step five, must correlate a VE's testimony in an individual case with vocational information provided in the Dictionary of Occupational Titles or other reliable publications). If the ALJ fails this duty and there is an unresolved conflict between the VE's testimony and the DOT, the VE's testimony cannot constitute substantial evidence to support a determination of non-disability. *Id.* at 1091 (clarifying that the duty applies at steps three, four, and five of the sequential evaluation process).

At the administrative hearing, the ALJ presented the VE with the hypothetical scenario of a person limited to light work who could "understand and carry out simple repetitive, one, two, three step tasks in a routine work setting" who should also have only "minimal and superficial

contact with the public." AR 77. In response to this hypothetical question, the VE identified four jobs such a person could allegedly perform: office helper, small products assembler, laundry folder, and price tagger. AR 77-78.

Plaintiff's representative, cross-examined the VE seeking information as to the general education development (GED) level for each job as listed in the DOT. Specifically, Plaintiff's representative wanted to know the reasoning level of each job as defined in the DOT. According to the VE, three of the four jobs she identified require a reasoning level two; the exception is the job identified as office helper, which requires reasoning level three. AR 79. The VE was unable to provide the DOT definition of "reasoning level two" during the hearing. AR 80-81. At the request of the ALJ, the VE provided the following definition post hearing:

> Applying commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deals with problems involving a few concrete variables in or from standardized situations.

AR 255. The VE stated in an accompanying letter to the ALJ that her testimony would not have changed had she known and considered the definition of reasoning level two when she testified at the administrative hearing. In effect, the VE determined Plaintiff could perform at least the identified jobs requiring only a reasoning level of two, despite the ALJ's hypothetical scenario limiting the hypothetical person to "simple repetitive, one, two, three step tasks in a routine work setting." AR 77. These same limitations were included in the ALJ's second RFC determination. AR 33.

Plaintiff contends jobs requiring the ability to "carry out detailed but uninvolved written or oral instructions," cannot be performed by an individual who is only "able to understand, remember, and follow simple, repetitive 1-2-3 step tasks in a routine work setting." AR 33.

Defendant contends Plaintiff's RFC is not relevant to determining whether he can perform the jobs the VE identified. Citing an unpublished decision from the Tenth Circuit, Defendant asserts, "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job." *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013). A judge of this court recently rejected this same argument in a factually similar case. *See Wiggins v. Colvin*, No. CIV-14-103-R, 2015 WL 5157492, at *3 (W.D. Okla. Sept. 2, 2015) ("The Court is not convinced that there is no relationship between an individual's RFC and the reasoning level listed in the Dictionary of Occupational Titles ("DOT") for a particular position.").

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit reversed the portion of the ALJ's decision in which the ALJ found the plaintiff could perform two positions requiring level three reasoning because the plaintiff could maintain the "attention, concentration, persistence and pace levels required [only] for simple and routine work tasks," and this limitation "seem[ed] inconsistent with the demands of level-three reasoning." *Id.* In *Wiggins*, this court found level two reasoning is also incompatible with inability to understand, remember and carry out detailed, work-related tasks. *Wiggins* at *3. Thus, this error, too, requires reversal and remand for further proceedings.

## RECOMMENDATION

In sum, the ALJ erred in his analysis of treating source opinions, and in his analysis of the materiality of DAA to Plaintiff's disability. Additionally, the ALJ erred in failing to correlate a VE's testimony with vocational information provided in the DOT. It is therefore recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by November 16, 2015; *see* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); LCvR 72.1. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 26th day of October, 2015.

BERNARD M. JONES
United States Magistrate Judge